959 So.2d 904 (2007)
SIGNLITE, INC.
v.
NORTHSHORE SERVICE CENTER, INC., D/B/A Stop N' Gas Go and Mark Boudreaux.
No. 2005 CA 2444.
Court of Appeal of Louisiana, First Circuit.
February 9, 2007.
*905 William J. Faustermann, Jr., Slidell, for Plaintiff-Appellee Signlite, Inc.
Christopher J. Aubert, Christian W. Helmke, David S. Pittman, Covington, for Defendant-Appellant Northshore Service Center, Inc., d/b/a Stop N' Gas Go and Mark Boudreaux.
Before: PETTIGREW, DOWNING, and HUGHES, JJ.
PETTIGREW, J.
This is a suit for payment of a conventional obligation. The defendants have appealed from the rendition of a default judgment in favor of the petitioner. We reverse in part, vacate, and remand.

FACTS
Signlite, Inc. ("Signlite"), a Louisiana corporation and petitioner herein, alleges in its petition that it was engaged by defendant, Northshore Service Center, Inc. ("Northshore"), d/b/a Stop Gas N' Go,[1] to manufacture and install one (1) sign and one (1) awning for the total price, including sales tax and permit fees, of Twenty-nine Thousand, Four Hundred and no/100 ($29,400.00) Dollars. It is further alleged that of this sum, Northshore paid a deposit of Fourteen Thousand, Seven Hundred and no/100 ($14,700.00) Dollars.
Pursuant to the terms set forth in the "Proposal and Sales Agreement," the defendants agreed to pay the remaining balance upon completion of the installation. The agreement further provided that defendants would pay a service charge of 1½ percent per month on past due amounts not paid within thirty (30) days from the invoice date. The terms of the agreement further provided that reasonable attorney fees would be added in the event the contract was placed for collection or if collected by suit.
Signlite further alleges as part of its petition that Mark Warren Boudreaux ("Mr.Boudreaux"), also named as a defendant in this matter, executed, accepted, and personally guaranteed the payment of the invoice to Signlite. Signlite, through its authorized agent, thereafter accepted *906 the terms of the contract at its corporate offices in Slidell, Louisiana.
According to the allegations of the petition, the installation of the sign and the awning at the Stop Gas N' Go, 2501 N. Hwy. 190, Covington, Louisiana, was completed on March 8, 2005. Signlite asserts that Northshore and Boudreaux thereafter failed to pay the remaining balance in violation of the terms and conditions of the agreement.

ACTION OF THE TRIAL COURT
Signlite subsequently filed suit in the 22nd Judicial District Court for the Parish of St. Tammany against Northshore and Mr. Boudreaux on May 23, 2005, seeking recovery of the balance due pursuant to the terms of the contract. Signlite filed a motion seeking entry of a preliminary default on June 13, 2005.[2] A preliminary default was entered by the court on June 14, 2005. On July 5, 2005, a notarized affidavit from the controller of Signlite, attesting to the correctness of the Northshore account, was filed into the record together with the original Proposal and Sales Agreement, a copy of the original Signlite invoice, an affidavit from Signlite's attorney certifying as to procedural compliance, and an affidavit from Signlite's attorney that attached a copy of Signlite's billing statement setting forth the time spent by said attorney prior to confirmation of the default.
On July 14, 2005, the date the default was confirmed, the deputy clerk of court certified that no answer or opposition had been filed in response to the petition filed by Signlite. The trial court thereafter rendered a default judgment confirming the preliminary defaults entered against Northshore and Mr. Boudreaux on June 14, 2005.
On July 28, 2005, Northshore and Mr. Boudreaux moved for a new trial and to set aside the default judgment on the ground that Signlite failed to establish all elements of a prima facie case as required by the Louisiana Code of Civil Procedure for the entry of a default judgment. These motions were subsequently denied by the trial court on July 29, 2005; and Northshore and Mr. Boudreaux moved for a suspensive appeal.

ISSUES
In connection with their appeal in this matter, Northshore and Mr. Boudreaux set forth the following issues for review and consideration by this court:
1.) What is the standard to be used by the Court of Appeal to set aside a default judgment?
2.) Did Signlite meet its burden of proving a prima facie case in the trial court?
3.) Was the award of attorney fees set by the trial court excessive?

ANALYSIS
In a confirmation hearing on a default judgment, a plaintiff must present competent evidence that convinces the court that it is more probable than not that he would prevail in a trial on the merits. Carter v. Amite City Ford, Inc., XXXX-XXXX, p. 3 (La.App. 1 Cir. 6/25/04), 885 So.2d 1190, 1192. There is a presumption that a default judgment has been rendered upon sufficient evidence to establish a prima facie case and is correct, and appellant has burden of overcoming that presumption. However, the presumption that the default judgment was rendered upon sufficient *907 evidence and is correct does not apply where testimony is transcribed and contained in the record. Bates v. Legion Indemnity Company, XXXX-XXXX, p. 4 (La. App. 1 Cir. 2/27/02), 818 So.2d 176, 179. There is no transcript of the testimony in the case at hand; therefore, the presumption of the validity of the confirmation of default judgment applies.
The Louisiana Constitution of 1974 provides that the appellate jurisdiction of the courts of appeal extends to both law and facts. La. Const. Art. V § 10(B). A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that was manifestly erroneous or clearly wrong. See Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882, n. 2, (La.1993). When the court of appeal finds that a reversible error or manifest error of material fact was made in the trial court, it is required to redetermine the facts de novo from the entire record and render a judgment on the merits. Rosell v. ESCO, 549 So.2d 840.
A judgment by default may be entered against a defendant who fails to answer within the time prescribed by law. La. Code Civ. P. art. 1701 A. Louisiana Code of Civil Procedure art. 1702 specifies the procedure and evidence necessary to confirm a default. Louisiana Code of Civil Procedure art. 1702 A, B(1), and C govern when a demand is based upon a conventional obligation; while La.Code Civ. P. art. 1702 A, B(3), and C apply when a demand is based upon an open account.
Louisiana Civil Code article 1906 provides "A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." Pursuant to La. Civ.Code art. 1908, "A contract is bilateral, or synallagmatic, when the parties obligate themselves reciprocally, so that the obligation of each party is correlative to the obligation of the other."
Louisiana Revised Statutes 9:2781, which governs open accounts, attorneys fees, professional fees, and open accounts owed to the state, provides in paragraph D, as follows:
D. For the purposes of this Section and Code of Civil Procedure Articles 1702 and 4916, "open account" includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions. "Open account" shall include debts incurred for professional services, including but not limited to legal and medical services. For the purposes of this Section only, attorney fees shall be paid on open accounts owed to the state.
An open account necessarily involves an underlying agreement between the parties on which the debt is based. Gulfstream Services, Inc. v. Hot Energy Services, Inc., XXXX-XXXX, p. 4 (La.App. 1 Cir. 3/24/05) 907 So.2d 96, 100, writ denied, XXXX-XXXX (La.6/17/05), 904 So.2d 706.
Certainly, an open account is a contract, but our jurisprudence has made a distinction between open accounts and conventional obligations. A contract is significantly different from an open account. A "contract" is an agreement by two or more parties whereby obligations are created, modified, or extinguished, thereby establishing a concurrence in understanding the terms. An "open account," however, is an account in which a line of credit is running and is open to future modification because of expectations of prospective business dealings, and services are recurrently granted over a period of time. Shreveport Electric Co., Inc. v. Oasis Pool Service, Inc., 38,766 & 38,876, p. 8 (La.App. 2 Cir. *908 9/29/04) 889 So.2d 274, 279, writ denied, XXXX-XXXX (La.4/1/05) 897 So.2d 613. See also Tyler v. Haynes, 99-1921, p. 5 (La. App. 3 Cir. 5/3/00), 760 So.2d 559, 563.
In the case at hand, the trial court described the plaintiff's petition and rendered judgment based upon plaintiff's petition being a suit based upon an open account. This was a manifestly erroneous finding of fact on the part of the trial court, which interdicted its conclusion and judgment in this case. After a thorough review of the record, we conclude that what we have before us is not a suit on open account, but rather a suit on a conventional obligation based upon an alleged contract between Signlite, Inc. and Northshore d/b/a Stop Gas N' Go, for Signlite to manufacture an illuminated pole sign for Northshore for the specific price of $29,400.00.
Since this is a suit on a conventional obligation, Northshore, to confirm a default, must comply with La.Code Civ. P. art. 1702 A, B(1), and C, and further must prove by prima facie evidence that it completed its obligations under said contract. Orleans Sheet Metal Works and Roofing v. Landis Company, Inc., 96-0029, p. 2 (La. App. 4 Cir.1996) 678 So.2d 73, 74. By the very terms of its own contract, Signlite must present a prima facie case that it manufactured and delivered the completed sign to Northshore.
In support of its confirmation of the default judgment, Signlite introduced the following documents and/or exhibits:
1. Affidavit of Correctness of Account by Jerry Wiel, Controller of Signlite, Inc.
2. Copy of Proposal and Sales Agreement between Signlite, Inc. and Stop Gas N' Go, Mr. Eddie Hartson, dated November 24, 2004, for a total contract price of $29,400.00.
3. Invoice dated February 28, 2005, from Signlite, Inc. to Stop Gas N' Go, Mr. Eddie Hartson, showing a balance due of $17,272.50.
4. Affidavit of Attorney for Plaintiff, dated June 27, 2005, certifying the dates of service, the entry of the preliminary default, and that the suit is one on a conventional obligation.
5. Affidavit of William J. Fausterman, Jr. relative to attorney fees.
6. Certificate of the Deputy Clerk of Court, certifying no answer or other opposition has been filed to plaintiff's petition for confirmation of default.
The Proposal and Sales Agreement, dated November 24, 2004, between Signlite and Stop Gas N' Go, sets forth the price for the installation of the sign to be $29,400.00 and contains the following terms:
"TERMS: 501POSIT/BALANCE@ COMPLETION"
The contract specifically provides the balance due is upon completion. The Signlite invoice dated February 28, 2005, was addressed to "Stop Gas N' Go, Mr. Eddie Hartson, 2501 N. Hwy. 190, Covington, La. 70433," for $17,272.50. The invoice does not reflect the completion date of the installation of the sign or that the installation was completed. In fact, the space on the invoice indicating the date of completion is blank.
The Affidavit of Correctness of Account in support of the motion for confirmation judgment by Jerry Wiel, Controller of Signlite, does not verify that the installation of the sign was completed, nor does it give a completion date. Pursuant to the terms of the Proposal and Sales Agreement, Northshore d/b/a Stop Gas N' Go was not liable for the balance due to Signlite until the completion of the installation. There is no evidence in the record to indicate *909 that Signlite completed installation of the sign.
On July 28, 2005, Northshore and Mr. Boudreaux timely moved for a new trial to set aside the default judgment on the ground that Signlite failed to establish all the elements of a prima facie case as required by the Louisiana Code of Civil Procedure for the entry of a preliminary default judgment. Louisiana Code of Civil Procedure article 1972 provides, in part, as follows:
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence.
These motions were denied by the trial court on July 29, 2005.
On appeal, the denial of a motion for new trial should not be reversed unless there has been an abuse of the trial court's discretion. McCray v. J/H/J Inc., 99-2283, p. 7 (La.App. 1 Cir. 11/3/00), 769 So.2d 1273, 1277. In this proceeding the trial court committed manifest error in interpreting the contract between Signlite and Northshore as an open account when in fact it was on a conventional obligation; said factual finding interdicted the judgment of the trial court. Further, there was no evidence presented that Signlite completed the construction of the sign, which was necessary for them to prove a prima facie case against Northshore and Mr. Boudreaux. These findings were clearly contrary to the law and the evidence and entitled Northshore and Mr. Boudreaux to a new trial pursuant to La. Code Civ. P. art. 1972(1).
For these reasons, we hereby reverse the trial court's denial of the Motion for New Trial filed by Northshore and Boudreaux. In addition, we vacate and set aside the default judgment rendered July 18, 2005, in favor of Signlite, Inc. and against the defendants, Northshore Service Center, Inc. d/b/a Stop Gas N' Go and Mark Boudreaux, in the amount of $17,272.50, and we remand this matter to the trial court for further proceedings consistent with this opinion.
All costs of this appeal shall be assessed against Signlite, Inc.
JUDGMENT DENYING NEW TRIAL REVERSED; JUDGMENT OF JULY 18, 2005, VACATED AND SET ASIDE; THIS MATTER REMANDED FOR FURTHER PROCEEDINGS.
DOWNING, J., concurs and assigns reasons.
DOWNING, J., concurring.
I agree with the opinion where it addresses the merits of the judgment on appeal. However, I disagree with the majority insofar as it addresses and rules on the trial court's denial of Northshore's and Boudreaux's motion for new trial. The established rule in this circuit is that the denial of a motion for new trial is an interlocutory and non-appealable judgment.[1]Carpenter v. Hannan, 01-0467, p. 4 (La.App. 1 Cir. 3/28/02), 818 So.2d 226, 228, citing Morrison v. Dillard Department Stores, Inc., 99-2060, p. 2 (La.App. 1 Cir. 9/22/00), 769 So.2d 742, 744. The Louisiana Supreme Court, however, has instructed us to consider an appeal of the denial of a motion for new trial as an *910 appeal of the judgment on the merits, when it is clear from appellant's brief that the appeal was intended to be on the merits. Carpenter, 01-0467 p. 4, 818 So.2d at 228-229. Thus, we are to review the judgment on the merits and not the judgment denying a new trial.
Here, the appellant did not assert the denial of a new trial as a ground of appeal. Yet, the majority opinion discusses the appeal of the denial of the new trial and reverses the trial court's ruling in this regard. I respectfully suggest that this discussion, together with all references to reversing on this ground, misrepresents the state of the law and should be disregarded.
NOTES
[1] Despite the fact that the caption of the plaintiff's petition, and hence all subsequent pleadings, set forth the name of the defendant entity as "Stop N' Gas Go," it appears that the correct name of said entity is "Stop Gas N' Go."
[2] Within its Motion for Preliminary Default, counsel for Signlite averred that service of the citation and petition was made by the sheriff upon the registered agent for Northshore and upon Mark Boudreaux personally on May 25, 2005.
[1] By 2005 La. Acts No. 205, effective January 1, 2006, La. C.C.P. art. 2083 was amended to remove the longstanding provision that interlocutory judgments that "may cause irreparable harm" are appealable. An interlocutory judgment is now appealable only when expressly provided by law. Accordingly, the denial of a new trial is not generally appealable