STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2018 CA 1691

SBL CONSTRUCTION, LLC

VERSUS

MICHAEL M. EYMARD AND TRAM INVESTMENTS, INC.

*DATE OF JUDGMENT:* NOV 1 2 2019

ON APPEAL FROM THE SEVENTEENTH JUDICIAL DISTRICT COURT
NUMBER 119854, DIVISION E, PARISH OF LAFOURCHE
STATE OF LOUISIANA

HONORABLE F. HUGH LAROSE, JUDGE

* * * * * *

Christopher H. Riviere
Todd M. Magee
Thibodaux, Louisiana

Counsel for Plaintiff - Appellee
SBL Construction, LLC

Martin Stewart Bohman
Harry E. Morse
New Orleans, Louisiana

Counsel for Defendants - Appellants
Michael M. Eymard and Tram
Investments, Inc.

Victor R. Loraso, III
Baton Rouge, Louisiana

* * * * * *

BEFORE: McDONALD, THERIOT, AND CHUTZ, JJ.

Disposition: REVERSED IN PART; AFFIRMED IN PART.

Theriot, J. concurs

McDonald, J. concurs and will assign reasons.

**CHUTZ, J.**

Appellants, Michael M. Eymard and Tram Investments, Inc. (Tram), appeal the trial court's judgment against them, awarding $30,000.00 for the balance owed on an open account in favor of appellee, SBL Construction, LLC (SBL), and denying relief on Tram's reconventional demand against SBL. For the reasons that follow, we reverse in part and affirm in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The evidence established that in September 2009, Eymard on behalf of Tram (a company that Eymard owns with his wife) and Frank Boura on behalf of SBL (a company that Boura owns) met at Eymard's office to discuss the construction of a bulkhead by SBL for Tram on Bayou Lafourche in Lafouche Parish. SBL utilized one of its invoices to provide an estimate to Tram.[1] The cost of the construction of the bulkhead was determined on a by-the-foot basis.

Boura provided two options for the bulkhead, with each option consisting of different materials, and Tram selected the option that utilized thicker vinyl sheets and bigger pilings. Although SBL was asked to provide a bid for a 280-foot bulkhead, Tram changed the design and requested additional footage. The parties created no written documents to support the change. At the end of construction, SBL submitted an invoice to Tram, dated August 3, 2010, requesting payment of $92,244.96, which reflected the construction of a bulkhead that was 336 feet.[2]

As of May 12, 2011, Tram had paid all but $30,000.00 of the amount SBL invoiced. When SBL demanded final payment, Boura was advised by Tram that the construction required remedial work because the bulkhead had bowed.

---

[1] Although the invoice indicated the estimate was provided to "OMC," apparently denoting Offshore Marine Contractors, another company owned by Eymard, it is undisputed that ultimately, the bulkhead was constructed for Tram.

[2] The per-foot charge for materials was $138.00 and for labor was $202.61. The invoice also reflected undisputed charges of $2,100.00 for installation of some pilings outside the bulkhead that were supplied by Eymard and $700.00 to move the equipment to plant pilings, as well as a credit of $25,000.00 for a deposit that Tram tendered before construction commenced.

2

Although Boura attributed the bowing to Tram's backfilling with sand, because he was advised by Tram that to collect the outstanding balance, he had to fix it and since he wanted to straighten it out before leaving the construction site, SBL undertook all the requests that Tram made. On August 16, 2011, and again on October 17, 2011, SBL sent written demands for $30.000.00 to Tram after having completed the remedial work, but the outstanding balance remained unpaid.

On March 22, 2012, SBL filed this lawsuit, naming Eymard and Tram as defendants and alleging entitlement to the balance of $30,000.00. SBL specifically averred the amount owed was due on an open account and sought reasonable attorney's fees. Tram answered the lawsuit and asserted a reconventional demand, contending that SBL breached the parties' agreement by failing to perform in a proper and workman-like manner and rendering a defective and substandard performance. Tram alleged that its damages consisted of the cost of repair of the bulkhead. Shortly thereafter, SBL voluntarily dismissed Eymard from the litigation without prejudice.

The matter proceeded to a trial on the merits at which testimonial and documentary evidence was adduced. On July 30, 2018, the trial court issued written reasons for judgment, concluding that the parties' agreement was an open account for which SBL was owed the balance due. The trial court also determined that Eymard and Tram failed to prove that SBL's construction of the bulkhead was defective and, therefore, were not entitled to relief. On July 31, 2018, the trial court signed a judgment that ordered Eymard and Tram to pay SBL the amount of $30,000.00 for the balance owed on the open account and denied Tram's claims for

3

relief on the reconventional demand. This appeal followed.[3]

## LIABILITY OF EYMARD

Although the trial court cast Eymard in judgment, SBL does not dispute that he had been dismissed from the lawsuit prior to the trial on the merits. Accordingly, because SBL concedes that the portion of the judgment ordering Eymard to pay $30,000.00 for the balance owed on the open account is erroneous, that portion of the judgment is reversed.

## TRAM'S LIABILITY FOR AN OPEN ACCOUNT

On appeal, without challenging the amount of liability imposed, Tram asserts that the trial court erred in characterizing the parties' agreement as an open account rather than a conventional obligation, noting that historically the courts have not construed construction contracts as open accounts. Describing the contract to construct the bulkhead as "a single transaction," Tram suggests that the parties' agreement was for a specific price without the running of a line of credit or expectations of future dealings between the parties. Thus, Tram avers the agreement was not an open account and that the trial court's conclusion to the contrary was erroneous.

An open account "includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions." La. R.S. 9:2781(D).

In *R. L. Drywall, Inc. v. B & C Elec., Inc.*, 2013-1592 (La. App. 1st Cir. 5/2/14), 2014 WL 3559390, this court addressed whether an agreement to provide drywall services in a warehouse building constituted an open account. The builder

---

[3] The appealed judgment also decreed that Eymard and Tram show cause why they should not be ordered to pay reasonable attorney's fees to SBL. On September 12, 2019, the record was supplemented with a judgment designating the appealed judgment as final for purposes of immediate review, see La. C.C.P. art. 1915(B), pursuant to this court's limited remand order of August 30, 2019.

4

had provided a bid to the owners of the building for services and materials using an invoice which estimated a total amount of $11,012.00. However, the project was later expanded to include an additional ceiling and another room. In response to the expansion, the builder provided a total bid of $12,337.00 for the modified project. After completion of the job, the warehouse owners tendered a $5,000.00 check to the builder as "a good-faith down payment" until the parties could sit down and figure out the basis of the builder's charges. The builder did not cash the check, but instead filed suit. *R. L. Drywall, Inc.*, 2014 WL 3559390, at *1.

On appeal, the warehouse owners contended that the trial court had erred in its conclusion that the agreement fell within the parameters of an open account under La. R.S. 9:2781 because the contract between the parties clearly contemplated a single construction job rather than any on-going relationship and, due to the failure of the builder to provide a reasonable explanation, the amount owed was unclear. In addressing the owners' contentions, this court stated:

> In *Frey Plumbing Company, Inc. v. Foster*, 2007-1091 (La. 2/26/08), 996 So.2d 969 (per curiam), a homeowner hired a plumbing company to fix an underground pipe at her residence. The plumbing company issued an invoice to the homeowner after the work was performed. The bill remained unpaid for over six months. During that time, the plumbing company sent written demands for payment to the homeowner to no avail. The plumbing company filed suit to recover payment and also sought an award of attorney's fees under the open account statute. The homeowner filed a motion for partial summary judgment, arguing that the claim did not constitute a claim on open account where the services were for a first and only transaction between the parties, there was no line of credit, only one invoice was submitted for a single-time payment, and no additional jobs were anticipated. *Frey Plumbing Company, Inc. v. Foster*, 996 So.2d at 970. The trial court granted the [motion for partial summary judgment], finding the claim did not constitute a claim on an open account. The court of appeal denied the plumbing company's writ application, finding no error in the trial court's judgment. On review, the Supreme Court determined that the trial court erred in finding that a contract for open account could not exist between the parties merely because there was only a single transaction between them and no future transactions were contemplated. The Court noted that any account which fits the definition of an open account, including but not limited to an account for professional services, fits within the ambit of the statute, reasoning that: "La. R.S. 9:2781(D) must be applied as

5

written. Under a plain reading of the statute, there is no requirement that there must be one or more transactions between the parties, nor is there any requirement that the parties must anticipate future transactions. To the extent the prior case law has imposed any requirements which are inconsistent with the clear language of La. R.S. 9:2781(D), those cases are overruled." *Frey Plumbing Company, Inc. v. Foster*, 996 So.2d at 972.

Under *Frey*, which directs us to apply the language of [La.] R.S. 9:2781(D) as written (*i.e.*, that an "open account" includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions), we find the account herein fits the definition of an open account as pled by plaintiff in his petition. The clear language of the statute states that an open account "includes any account[,]" and nowhere in the statute are construction accounts or contracts specifically excluded.

*R. L. Drywall, Inc.*, 2014 WL 3559390, at *5-6.

In the case before us, the undisputed evidence showed that although the parties clearly agreed to a by-the-foot price, the length of the bulkhead was not determined prior to the time SBL undertook construction. Boura's testimony suggested that at some point during construction, Eymard indicated that Tram wanted to extend the length of the bulkhead. Eymard stated that it was during their initial discussions in September 2009, when SBL provided its bid, that he voiced an interest in changing the design to include additional footage. According to Eymard, Boura advised him that whatever additional bulkhead length Tram added "would come out by the foot." Eymard explained that Tram did an offset where the south side of the bulkhead protruded a little further out than the north half of it. Although Tram did not plead or advise SBL in writing, Eymard testified that on the date of trial, the total length of the bulkhead was only 326 feet. He stated that he had it measured twice the week before trial and that the 336-foot length that SBL claimed was "not the correct number."

Tram's record of payments showing that Tram had an "Open Balance" of $30,000.00 due to SBL, as well as Boura's testimony explaining the timing of SBL's receipt of payments, support the trial court's determination that the

6

transaction between the parties was an open account. The parties negotiated an agreement for construction that did not include a specific amount for the bulkhead because the undisputed evidence showed that the total length was not contemplated at the time they agreed to the per-foot price. SBL demanded payment of the $30,000.00 outstanding balance as late as October 17, 2011, prior to filing suit. That the account reflected only one transaction and that Tram did not intend to engage SBL in future transactions are irrelevant to the characterization of the debt as an open account under the plain language of La. R.S. 9:2781(D). Accordingly, we find no error in the trial court's conclusion that Tram is liable to SBL for the outstanding balance on the open account.[4]

## SBL'S LIABILITY FOR A DEFECTIVE PERFORMANCE

Initially, we note that Tram attempted to have Howie Guidry admitted as an expert witness in bulkhead construction and repair. Although Guidry had been listed as a fact witness in conjunction with an estimate for repair of the bulkhead that he had prepared for Tram, SBL objected to any expert testimony by him as to causation of alleged defects in the bulkhead on the grounds that he had not been disclosed as an expert witness prior to trial. The trial court sustained the objection and limited Guidry's testimony to the estimate he provided to Tram. Apparently, since it is well settled that where a pre-trial order has not been complied with, it is

---

[4] In determining whether a contract fell within the three-year prescription period for an open account under La. C.C. art. 3494(4), this court recently relied on *Factor King, LLC v. Block Builders, LLC*, 193 F.Supp.3d 651, 658-59 (M.D. La. 2016), to assist in its determination. *Shamrock Mgmt., LLC v. GOM Fabricators, LLC*, 2018-0491 (La. App. 1st Cir. 7/10/19), 2019 WL 3025237, at *4, writ denied, 2019-01255 (La. 10/21/19), --- So.3d ----. Thus, focus was given to whether the total cost or price was left open or undetermined; whether other business transactions between the parties existed; whether one party extended a line of credit to another; whether there are running or current dealings; and whether there are expectations of future dealings, noting however, that the open account statute does not require multiple transactions or for parties to anticipate future transactions. *Id.* Even if we were to apply these factors, we would find no error by the trial court in its conclusion that Tram was liable to SBL for the balance of $30,000.00 owed on the open account. Unlike *Shamrock Mgmt.*, here, based on the open and undetermined price as a result of the unknown footage of the bulkhead, which was not established in the parties' agreement prior to commencement of construction and, thus, resulted in the running of a line of credit by SBL in favor of Tram, and given the statutory language expressly allowing an open account "whether or not at the time of contracting the parties expected future transactions," there is no error in the trial court's determination that the parties' transaction constituted an open account under La. R.S. 9:2781(D).

within the trial court's discretion to disallow witnesses, expert or not, from testifying, see *Pittman v. Flanagan*, 2019-0038 (La. App. 1st Cir. 9/27/19), --- So.3d ----, ----, 2019 WL 4729515, at *5, on appeal Tram does not challenge the trial court's exclusion of Guidry's expert testimony. Instead, Tram urges that it was error for the trial court to require that it provide expert testimony to establish that faulty materials or workmanship caused a defect in the bulkhead. Thus, Tram claims the trial court committed legal error on the issue of whether SBL caused the defect in the bulkhead. On appellate review, Tram maintains it is entitled to a judgment finding that the bulkhead was inadequately built and awarding costs of repair.

If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract. La. C.C. art. 2769. In order to recover damages from a contractor, the owner must establish: (1) the defects exist, (2) that faulty materials or workmanship caused the defects, and (3) the cost of repairing the defects. The owner has the burden of proving each element of the claim by a preponderance of the evidence. *Matherne v. Barnum*, 2011-0827 (La. App. 1st Cir. 3/19/12), 94 So.3d 782, 789, writ denied, 2012-0865 (La. 6/1/12), 90 So.3d 442. A trial court's factual findings will not be reversed unless manifestly erroneous or clearly wrong. A reviewing court must determine whether the factfinder's conclusions were reasonable based upon the entire record. *Stobart v. State*, 617 So.2d 880, 882-83 (La. 1993).

In rendering its judgment, the trial court stated the following:

> This court was provided with evidence and testimony that the bulkhead has bowed out into the bayou since its construction, but because Mr. Guidry was not properly designated as an expert, he was barred from giving his opinion as to the cause of any defect. Therefore, without any proof that the construction of the bulkhead

itself was defective, this court [cannot] find that SBL is responsible for any amount of repairs that may be needed on the bulkhead.

Thus, the trial court concluded that Tram failed to carry its burden of proving that faulty materials or workmanship caused the bulkhead to bow.

The provisions of La. C.E. art. 702 provide that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion. The criterion of admissibility of that testimony is whether the particular specialized knowledge would "assist the trier of fact to understand the evidence or to determine a fact in issue." See 1988 Comment (a), La. C.E. art. 702. In this case, the written reasons amount to an explanation by the trial court that it needed an expert opinion to assist it in understanding the evidence relative to the issue of whether any alleged defect was caused by faulty materials or workmanship in SBL's construction of the bulkhead. Because there was no abuse of discretion by the trial court in excluding Guidry's expert opinion, we disagree with Tram's characterization of the trial court's perceived need for an expert opinion as legal error.

Importantly, it is the judgment -- not the reasons for judgment -- that we review on appeal. Judgments are often upheld on appeal for reasons different than those assigned by a trial court. The written reasons for judgment are merely an explication of the trial court's determinations. They do not alter, amend, or affect the final judgment being appealed. *Walton v. State Farm Mut. Auto. Ins. Co.*, 2018-1510 (La. App. 1st Cir. 5/31/19), 277 So.3d 1193, 1199 (citing *Wooley v. Lucksinger*, 2009-0571 (La. 4/1/11), 61 So.3d 507, 572). Thus, it is of no moment that the trial court explained to Tram that it denied the relief requested in its reconventional demand because it failed to provide expert testimony to assist in drawing a correlation between SBL's construction materials and workmanship and any alleged defects. Whether we review the evidence to ascertain if the trial court

9

correctly determined that Tram failed its burden of proof as suggested in the written reasons for judgment; or we attribute implicit findings based on the evidence adduced at trial, there was no manifest error in the denial of relief on the reconventional demand.

Tram maintains that Guidry's testimony in relation with his explanation of the repair estimate suggested that because larger and more pilings and larger and more tie-backs would remedy a bowed-out bulkhead, "it must follow that the bulkhead bowed out because of too-small pilings and too-small [tie-backs]." But the trial court was not manifestly erroneous in disregarding the inferences from Guidry's testimony to conclude that Tram failed to prove that the faulty materials and workmanship by SBL's construction was the cause of any bowing out of the bulkhead.

Moreover, photographs which were admitted into evidence dated between September 15, 2010 and March 10, 2011, along with Boura's testimony, established that at the time that SBL left the construction site, having concluded all the remedial work that it undertook at Tram's insistence, the bulkhead was straight. And insofar as the condition of the bulkhead on the date of trial, Boura likewise testified that it was "in straight condition." Indeed, Eymard admitted during his testimony that the bulkhead was straight both on the date that SBL left the construction site and the date of trial.

Additionally, Boura testified that it was the use of sand as backfill and Tram's placement of the sand that caused the bowing out of the bulkhead. Tram's witness and former employee, Wayne "Buck" Rogers, testified in conformity with Boura on this point. Both Boura and Eymard agreed that the use of sand was not within the estimate for construction and that it was Eymard who decided to use sand as the backfill material despite Boura's recommendation of oyster shells or some other light weight material. This testimony and photographic evidence

10

constitute a reasonable evidentiary basis to support the trial court's judgment denying relief on the reconventional demand based on an allegedly bowed-out bulkhead.

In addition to claiming that the bulkhead was defective because it was bowed out, Tram asserted that the bulkhead had experienced erosion due to faulty materials and workmanship in SBL's construction of the bulkhead. Photographs and the testimony of Tram's witnesses, including Eymard, support this contention. The trial court did not include any express findings regarding the erosion in its written reasons for judgment. Although Tram submits that Guidry's testimony that he used "a fabric that would allow water but not sand or earth ... to pass through" as a necessary material to prevent erosion and that "it stands to reason that its absence caused the erosion," the trial court was free to disregard those inferences. Its conclusion that Tram failed its burden of proving that faulty materials and workmanship in SBL's construction of the bulkhead was the cause of erosion was not manifestly erroneous or clearly wrong.

Moreover, our review of the appealed judgment demonstrates that a reasonable factual basis exists for an implicit conclusion by the trial court that Tram failed to prove that the erosion experienced on the bulkhead was caused by SBL's faulty materials or workmanship. Insofar as the necessity of the fabric, Boura testified that the vinyl sheeting used in construction of the bulkhead did not mandate the use of such a fabric. Additionally, as with the bowed-out bulkhead, Boura attributed the erosion on the bulkhead to Tram's choice of sand, rather than a lighter-weight material, as a backfill. It was within the trial court's purview to choose Boura's explanation over inferences from Guidry's recommendations for repair of the bulkhead, and such a choice is neither manifestly erroneous nor clearly wrong.

11

Accordingly, we cannot say that the trial court erred in denying Tram the relief it requested in its reconventional demand. Because Tram failed its burden of proving that that faulty materials or workmanship in SBL's construction caused the bulkhead to bow or erode, the trial court correctly denied Tram's request for relief asserted in its reconventional demand. And to the extent that the trial court credited Boura's version of the facts to conclude that it was the placement and use of sand that created issues with the bowing out of the bulkhead and erosion, this too is a permissible view of the evidence and supports the dismissal of the reconventional demand.

## DECREE

For all these reasons, the trial court's judgment is reversed insofar as it ordered Eymard to pay SBL the amount of $30,000.00 on the balance due on the open account.[5] In all other respects, the judgment is affirmed. Appeal costs are assessed against appellant, Tram Investments, Inc.

**REVERSED IN PART; AFFIRMED IN PART.**

---

[5] Because we reversed the judgment against Eymard insofar as it ordered him to pay on an open account and there is no other statutory or contractual basis alleged to support the imposition of such an award against him, the trial court's order directing him to show cause why he should not pay attorney's fees is likewise reversed. See *Roofing Products & Bldg. Supply Co., LLC v. Mechwart*, 2013-1506 (La. App. 1st Cir. 5/2/14), 2014 WL 2711793, at *2 ("It is well settled that an award of attorney fees is not allowed unless specifically authorized by statute or contract."). See also La. R.S. 9:2781(A) (providing for reasonable attorney's fees against a person who fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed).

SBL CONSTUCTION, LLC

VERSUS

MICHAEL M. EYMARD AND TRAM
INVESTMENTS, INC.

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2018 CA 1691

**McDonald, J.**

'JAN 2 2 2020

While I agree with the majority, I write separately to lament the demise and perhaps death of the regular contract, particular in construction matters. For many years there has been a distinction between an open account and a contract for services or construction. Frequently in a construction contract there are change orders and changes to the original contract. That is the situation in the case before us and I do not believe such changes should convert an ordinary contract into an open account.

The classic open account is some sort of credit agreement, typically found with credit cards. The merchant extends credit to the purchaser who pays either all or a portion of the amount owed on a regular basis. An open account is analogous to a credit account. **Monsanto Company v. KT Farms Partnership through Aymond**, 51,740 (La. App. 2 Cir. 11/15/17), 245 So. 3d 191, 201. KT Farms was a farming operation that entered into a no-interest financing agreement with Monsanto to purchase seed. When they failed to pay, Monsanto filed suit. The court of appeal affirmed the trial court's finding that the agreement was an open account.

This distinction between an open account and an account for services or construction was found in **Signlite, Inc. v. Northshore Service Center, Inc.**, 2005-2444 (La. App. 1 Cir. 2/9/07), 959 So.2d 904. Signlite contracted to manufacture and install a sign and awning at a convenience store operated by Northshore. A deposit of half the contract price was paid by Northshore. After installation was completed Northshore failed to pay the balance due and Signlite filed suit. The trial court found the suit was on an open account. The contract provided that payment of

the balance was due upon completion of installation and provided for a service charge of 1½ percent per month on past due amounts not paid within thirty days from the date of invoice. Even so, the court of appeal reversed and remanded the matter for other reasons. The appellate court found:

> Certainly, an open account is a contract, but our jurisprudence has made a distinction between open accounts and conventional obligations. A contract is significantly different from an open account. A "contract" is an agreement by two or more parties whereby obligations are created, modified, or extinguished, thereby establishing a concurrence in understanding the terms. An "open account," however, is an account in which a line of credit is running and is open to future modification because of expectations of prospective business dealings, and services are recurrently granted over a period of time.

**Signlite**, 959 So.2d at 907.

With the decision in **Frey v. Foster**, supra, the distinction between construction contracts and open accounts has disappeared. What I find particularly troublesome with **Frey** is that characterization of the contract (as an open account or not) is based on whether payment is made timely, and not on the intent of the parties at the time the contract was confected. The plumbing company agreed to perform the plumbing services for a stated amount. There is no indication this amount was ever changed or modified. After completion of the work, an invoice was sent to the homeowner and the bill remained unpaid. The courts determined that the contract was an open account because there was a balance due. This decision would transform any contract into an open account simply because there was some dispute over the amount owed.

I do not believe the case before us should be an open account, but feel the majority is correct in light of **Frey**.

2